CITY OF SHERMAN, Texas et al., Petitioners,

v.

PUBLIC UTILITY COMMISSION OF TEXAS et al., Respondents.

No. C–1311.

Supreme Court of Texas.

Jan. 5, 1983.

Gregory D. Humbach, City Atty., Sherman, Booth, Lloyd & Simmons, Skip Newsom and Frank R. Booth, Austin, for petitioners.

Brown, Hill, Ellis & Brown, John W. Ellis, Jr., Sherman, Mark White, Atty. Gen., Leon Barish and Jack Bishop, Asst. Attys. Gen., Austin, for respondents.

BARROW, Justice.

The City of Sherman (City) and Greater Texoma Municipal Utility District (Texoma), petitioners, filed this action under the Declaratory Judgment Act, article 2524–1,[1] against the Public Utility Commission of Texas (PUC) and Luella Water Supply Corporation (Luella), respondents. The purpose of the suit was to determine if the PUC has jurisdiction to prohibit, condition, control or otherwise regulate the groundwater development activities of petitioners. City has acquired land and proposes to drill four water wells on land outside the City's municipal limits and within the service area of Luella. The Texas Water Commission approved City's project and authorized Texoma to issue 7.5 million dollars in revenue bonds for the construction of the water supply facilities. City does not intend to sell water to customers within Luella's certificated area, but the groundwater will be produced from the same underground "sands" or strata as those from which Luella secures the water for its customers.

Luella complained to the PUC and sought to prohibit City from producing water within Luella's service area. PUC's examiner concluded, after a hearing on jurisdiction, that the PUC possessed no subject-matter jurisdiction to determine the issues raised by Luella's complaint. The Commissioners disagreed and remanded the case to the examiner for an evidentiary hearing to determine if City's proposed action will interfere with Luella's operations. City then filed this action in the district court seeking declaratory and injunctive relief. The PUC's assertion of jurisdiction has effec-

---

1. All statutory references are to Texas Revised Civil Statutes Annotated.

tively stopped City's water acquisition program which is necessary to meet the needs of City's citizens. In addition, it has prevented Texoma from selling the revenue bonds necessary to pay for the water acquisition program.

The trial court held that the PUC lacked jurisdiction and rendered its judgment restraining PUC from proceeding further with respect to Luella's complaint. The court of appeals, with one justice dissenting, reversed the judgment of the trial court, dissolved the injunction, and rendered judgment that the PUC had jurisdiction to entertain the complaint filed by Luella. 632 S.W.2d 624. We reverse the judgment of the court of appeals and affirm the trial court judgment.

■ At the outset, the Commission urges that its order remanding the case to the hearing examiner for an evidentiary hearing was not appealable and therefore the courts lack jurisdiction. As a general rule, judicial review of administrative orders is not available unless all administrative remedies have been pursued to the fullest extent. *See Sun Oil Co. v. Railroad Commission of Texas,* 158 Tex. 292, 311 S.W.2d 235 (1958). Section 19(a) of the Administrative Procedure and Texas Register Act, article 6252–13a, codifies this doctrine by restricting the right of judicial review to parties who have "exhausted all administrative remedies available within the agency." In *City of Corpus Christi v. Public Utility Commission,* 572 S.W.2d 290, 299–300 (Tex. 1978), we said, "[c]oncern for efficient administrative procedure requires consideration of the validity of interim orders only upon appeal from final orders."

■ There are exceptions to the doctrine of exhaustion of administrative remedies. *See, e.g., Texas State Board of Examiners in Optometry v. Carp,* 162 Tex. 1, 343 S.W.2d 242, 246 (1961); *Texas State Board of Pharmacy v. Walgreen Texas Co.,* 520 S.W.2d 845, 848 (Tex.Civ.App.—Austin 1975, writ ref'd, n.r.e.). In *Westheimer In-*

*dependent School District v. Brockette,* 567 S.W.2d 780, 785 (Tex.1978), we reaffirmed one such exception to this doctrine. We said:

> It follows, however, that intervention by the court in administrative proceedings may be permissible when an agency is exercising authority beyond its statutorily conferred powers. Specifically, it has been held that when there is an absence of jurisdiction in an administrative agency, then the doctrine of exhaustion of administrative remedies is not applicable.

We hold this exception is applicable here.

The Commission and Luella assert, and the court of appeals held, the PUC has jurisdiction over operations of municipally-owned water utilities under section 17(e) of the Public Utility Regulatory Act, article 1446c. The Public Utility Regulatory Act (Act) was created to establish a comprehensive regulatory system over the rates, services and operations of public utilities. Prior to passage of the Act, municipalities played a major role in public utility regulation in Texas. *See generally* Newcomb, *Some Aspects of Regulation of Public Utilities Operating in the State of Texas,* 5 Baylor L.Rev. 335 (1953). Consequently, many municipalities were concerned about state-wide regulation for two reasons: (1) they could lose their power to franchise and regulate utilities, and (2) municipally-owned utilities could be state regulated. Hopper, *A Legislative History of the Texas Public Utility Regulatory Act of 1975,* 28 Baylor L.Rev. 777 (1976). For these reasons, the Texas Municipal League opposed the creation of a state commission. As a compromise, the Act retained municipal regulation within the territorial boundaries of municipalities[2] and exempted municipally-owned utilities from most of the Act's regulatory provisions.[3]

Article 1446c, section 3(c) provides:

> The term "public utility" or "utility," when used in this Act, includes any per-

---

2. Article 1446c, §§ 17(a), 22.

3. *See generally* Pleitz & Little, *Municipalities and the Public Utility Regulatory Act,* 28 Baylor L.Rev. 977 (1976).

son, corporation, river authority, cooperative corporation, or any combination thereof, *other than a municipal corporation* or a water supply or sewer service corporation, .... (emphasis added).

The Act also contains the following provisions relating to original municipal jurisdiction within the territorial limits of each municipality, and original PUC jurisdiction outside of municipal boundaries:

Sec. 17. (a) Subject to the limitations imposed in this Act, and for the purpose of regulating rates and services ..., the governing body of each municipality shall have exclusive original jurisdiction over all electric, *water,* and sewer *utility* rates, operations, and services provided by an electric, *water,* and sewer *utility within its city or town limits.*

....

(e) The Commission shall have exclusive original jurisdiction over electric, *water,* and sewer *utility* rates, operations, and services *not within the incorporated limits of a municipality exercising exclusive original jurisdiction over those rates, operations, and services as provided in this Act.* (emphasis added).

To interpret these provisions, we must apply the principles of statutory construction set forth in *Magnolia Petroleum Co. v. Walker,* 125 Tex. 430, 83 S.W.2d 929, 934 (1935) and quoted with approval in *City of Coahoma v. Public Utility Commission,* 626 S.W.2d 488, 490 (Tex.1981).

No inflexible rule can be announced for the construction of statutes. However, the dominant rule to be observed is to give effect to the intention of the Legislature. Generally the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, it is proper to consider the history of the subject-matter involved, the end to be attained, the mischief to be remedied, and the purposes to be accomplished. "Where, however, the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning. If the intentions of the Legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with general principles of law." [citations omitted].

The court of appeals concluded that since no distinction is made between privately-owned and municipally-owned utilities in section 17, the PUC has original and exclusive jurisdiction over "operations" and "services" of municipally-owned utilities outside municipal limits under section 17(e). We disagree.

The legislative intent to exclude municipally-owned utilities from the Act's jurisdictional provisions is clear. Section 3(c) of the Act expressly excludes municipally-owned utilities from its definition of the terms "public utility" and "utility."[4] The term "utility" specifically was used to distinguish municipally-owned utilities from those utilities which are governed by the Act and, thus, to exclude municipally-owned utilities from the jurisdictional provisions of section 17.[5] In addition, the very issue of continued city jurisdiction versus PUC jurisdiction over ratepayers of municipally-owned water and electric utilities who live outside municipal limits was thoroughly discussed by the conference committee members who drafted the final version of the Act. They decided to allow cities to retain original jurisdiction over municipal utilities' non-resident ratepayers, but granted those ratepayers the right to appeal any decision of a city governing body affecting the services of such utilities.[6] Finally, to construe section 17(e) as granting the PUC "exclusive original" jurisdiction over munic-

---

4. *See* Article 1446c, § 3(c). This exemption is carried forward in other definitional provisions of the Act. *See, e.g., id.* § 3(c)(4), (3)(m).

5. *See* Transcript of Conference Committee on H.B. 819 at 4 (June 1, 1975 at 9:00 p.m.).

6. *See id.* at 2, 4, 9 & at 5–10, 19–20 (June 1, 1975 at 3:00 p.m.); *see also* Article 1446c, § 26(c).

ipally-owned utilities would give the Commission both original and appellate jurisdiction over municipal service to ratepayers outside city limits. The legislature obviously did not intend such a result.

We conclude that while the PUC may share original jurisdiction with a municipality over the operations or services of a "public utility" which operates both inside and outside municipal limits, it has no statutory authority to regulate the operations or services of "municipally-owned utilities" under section 17(e). Since City's water system is municipally-owned, the PUC has no jurisdiction under 17(e) and it is unnecessary to determine whether the proposed activity relates to "operations" or "services" within the meaning of this section.

It is also urged the PUC has jurisdiction to act upon Luella's complaint under article VII, section 60 of the Act. Specifically, Luella alleges the action of the City in drawing water from the common reservoir may deplete Luella's supply, and thus interfere with the operation of its water supply system in violation of section 60. Both Luella and the Commission admit City has no intention of furnishing service to customers within the area assigned to Luella under its certificate. Therefore, we are not concerned with the type of service interference which may result when competing utilities attempt to service the same geographical area for similar purposes.[7]

Section 60 provides:

If a *public utility in constructing or extending its lines, plant, or system interferes or attempts to interfere with the operation of a line, plant, or system of any other public utility,* the commission may issue an order prohibiting the construction or extension or prescribing terms and conditions for locating lines, plants, or systems affected. (emphasis added).

Section 23.38 of the PUC rules adds that each utility must construct its system "in such manner ... to prevent *interference* with service furnished by other public utilities insofar as practical." 16 Tex.Admin. Code § 23.38 (McGraw-Hill, Aug. 13, 1982) (emphasis added).

City claims section 60 is inapplicable because it is not a "public utility." Respondents, however, urge and the court below held, section 60 applies to municipally-owned utilities under our decision in *City of Coahoma v. Public Utility Commission, supra.* Our concern in *Coahoma* was whether city-owned utilities were entitled to section 53 "Grandfather Certificates." We found the language and legislative history of article VII unclear on this question, and concluded that excluding municipally-owned utilities from section 53 grandfather privileges would be unreasonable. Therefore, we held "the term 'public utility' used in section 53 includes 'retail public utility' as defined in section 49(a)." *Id.* at 491. The narrow question we are faced with here is whether the PUC has jurisdiction over a utility's groundwater production activity. Whether the term "public utility" in section 60 includes municipally-owned utilities is immaterial to our resolution of this issue.

The language of section 60 is unambiguous. The purpose of section 60 is to protect utilities from actual or threatened physical invasions of their operations by other utilities lawfully engaged in supplying services to the same geographical area. It also enables the Commission to regulate the construction of utility facilities in an effort to prevent utilities from harming or obstructing the operations or systems of other utilities.

Luella complains of no actual or threatened activity of the City which has or may obstruct, or otherwise impair the "operation

**7.** *See, e.g., City of Brownsville v. Public Utility Commission of Texas,* 616 S.W.2d 402 (Tex. Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *City of Lubbock v. South Plains Electric Cooperative, Inc.,* 593 S.W.2d 138 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.); *The Public Utilities Board of Brownsville v. Central Power & Light,* 587 S.W.2d 782 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *see also* Article 1446c, § 50(2). *See generally* Comment, *Certificates of Convenience and Necessity Under the Texas Public Utility Regulatory Act,* 28 Baylor L.Rev. 1115 (1976).

of a line, plant, or system." The sole issue presented by Luella's complaint is the proposed groundwater production activity of the City. It follows that the only possible order which the PUC could issue with respect to Luella's complaint, other than dismissing the complaint altogether, would involve restricting or otherwise conditioning City's right to produce its groundwater.

The absolute ownership theory regarding groundwater was adopted by this Court in *Houston & T.C. Ry. Co. v. East,* 98 Tex. 146, 81 S.W. 279 (1904). A corollary to absolute ownership of groundwater is the right of the landowner to capture such water. In *Friendswood Development Co. v. Smith-Southwest Industries, Inc.,* 576 S.W.2d 21 (Tex.1978), the Court had an opportunity to reconsider the propriety of this rule and refused to depart from it. Despite criticism of this theory, it remains the law today. *See generally* Greenhill & Gee, *Ownership of Ground Water in Texas; The East Case Reconsidered,* 33 Tex.L.Rev. 620 (1955); Tyler, *Underground Water Regulation in Texas,* 39 Tex.B.J. 532 (1976).

The Texas Water Code confirms private rights in underground water,[8] and is the sole source of statutory regulation of groundwater production.[9] Under Chapter 52 of the Code, underground water conservation districts may be created for the purpose of "conservation, preservation, protection, recharging and prevention of waste of underground water reservoirs or their subdivisions." Sections 52.001–.002, Texas Water Code. In furtherance of this purpose, water districts are authorized to "provide for the spacing of water wells and may regulate the production of the wells." Section 52.117, Texas Water Code.

■ Agencies may only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed. *Stauffer v. City of San Antonio,* 162 Tex. 13, 344 S.W.2d 158, 160 (1961). The PUC is neither expressly nor impliedly granted power to regulate groundwater production or adjudicate correlative groundwater rights.

■ We conclude the PUC has no jurisdiction over the groundwater production activity of City under the circumstances alleged here. We therefore hold that the trial court had jurisdiction over this declaratory judgment action and properly enjoined the PUC from proceeding further with respect to Luella's complaint.

Accordingly, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

---

**8.** *See* §§ 52.001–.002, Texas Water Code. Section 52.002 provides:

> The ownership and rights of the owner of the land ... in underground water are hereby recognized, and nothing in this code shall be construed as depriving or divesting the owner ... of the ownership or rights, subject to the rules promulgated by a district under this chapter.

**9.** *See* Chapters 28 & 52, Texas Water Code. Section 28.002 states:

> The department [Texas Department of Water Resources] shall make and enforce rules and regulations for conserving, protecting, preserving and distributing underground, subterranean, and percolating water located in this state and shall do all other things necessary for these purposes.