

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 21, 1996

Dr. Mike Moses
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Dr. Jack Christie
Chair
State Board of Education
12421 Memorial Drive
Houston, Texas 77024

Opinion No. DM-424

Re: Whether the State Board of Education may adopt a rule prescribing general content requirements for textbooks used in public schools, and whether the board's authority over textbook adoption extends to ancillary materials provided by publishers to schools at no cost to the state  (RQ-903)

Dear Commissioner Moses and Dr. Christie:

You request our opinion regarding the authority of the State Board of Education ("the board") to adopt a rule prescribing the content of state-funded textbooks for use in public schools. On July 12, 1996, the board adopted a rule requiring textbooks to adhere to certain general content requirements and limitations as a condition of board approval. 21 Tex. Reg. 7238 (1996) (to be codified at 19 T.A.C. § 66.66) (State Bd. of Educ.). The board conditioned the effectiveness of the rule on a finding by this office that the rule is within the board's rule-making authority. It is our opinion that the board has no authority to adopt the proposed rule prescribing textbook content.

You also ask several questions regarding the board's authority with respect to "ancillary" items provided by textbook publishers free of charge to school districts. We conclude that the board's authority to adopt or reject textbooks does not extend to consideration of ancillary items provided to school districts at no cost to the state.

## Textbook Adoption

In 1995 the Texas Legislature completely revised the Education Code in Senate Bill 1, making substantive changes in the laws governing Texas public schools.[1] The revised code sets out the powers and duties of the State Board of Education, a state agency that the constitution required the legislature to create with "such duties as may be prescribed by law." Tex. Const. art. VII, § 8; *see*

---

[1]Act of May 27, 1995, 74th Leg., ch. 260, 1995 Tex. Gen. Laws 2207, 2207. The new code became effective May 30, 1995. Textbook adoptions already in progress on the effective date were to continue in accordance with the former code. *Id.* § 69, at 2501.

Educ. Code § 7.102.[2]  As a state agency, the board has only those powers expressly granted to it or necessarily implied from or incident to its express powers. *Central Educ. Agency v. Upshur County Comm'rs Court*, 731 S.W.2d 559, 561 (Tex. 1987); *Sherman v. Public Util. Comm'n*, 643 S.W.2d 681, 686 (Tex. 1983); Attorney General Opinion JM-971 (1988) at 1.

The legislature's grant of power to the board allows the board to "perform only those duties relating to school districts or regional education service centers assigned to the board by the constitution of this state or by [the Education Code]." Educ. Code § 7.102. In a section entitled "Limitation on Authority," the new code expressly reserves to school districts and open-enrollment charter schools any "educational function not specifically delegated to the [Texas Education Agency] or the board." *Id.* § 7.003. In light of the code's express limitations on the board's authority, we construe strictly its grants of power to the board.

Education Code section 7.102(b)(24) requires the board to adopt textbooks and textbook rules required by chapter 31, governing state funding, adoption, and purchase of textbooks. Textbooks selected for use in public schools are provided without cost to students attending those schools, *id.* § 31.001, using monies from the state textbook fund, *id.* § 31.021. Section 31.003 gives the board authority to promulgate rules, consistent with chapter 31, for the adoption of textbooks. When given rule-making authority, a state agency generally may adopt only such rules as are authorized by and consistent with its statutory authority. An agency rule may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with relevant statutory provisions. *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992); *Railroad Comm'n v. Arco Oil & Gas Co.*, 876 S.W.2d 473, 481-82 (Tex. App--Austin 1994, writ denied). Thus we consider whether the proposed textbook content requirements are authorized by or consistent with relevant statutory provisions. We conclude that they are not, in light of the Education Code's specific provisions regarding textbook selection and the general intent of the revised code to reduce and limit the board's authority.

Chapter 31 of the Education Code contains specific instructions to the board with respect to textbook selection. Section 31.023 provides:

---

[2]Article VII, section 3 of the Texas Constitution authorizes the collection of ad valorem taxes for the maintenance and support of public schools and provides: "[I]t shall be the duty of the State Board of Education to set aside a sufficient amount out of the said tax to provide free text books for the use of children attending the public free schools of this State." A 1935 attorney general opinion held that this provision should be construed broadly to give the board exclusive authority over the purchase and distribution of textbooks, which authority could not be diminished by the legislature. *See* Attorney General Opinion O-2968 (1935). While not expressly overruling Attorney General Opinion O-2968, the attorney general subsequently held that article VII, section 3 was never intended to confer upon the board exclusive control over the textbook fund, and that the legislature retains power to prescribe the manner of purchase and distribution of textbooks by the board. *See* Attorney General Opinion O-561 (1939); *see also* Attorney General Opinions H-507 (1975) (affirming Attorney General Opinion O-561), WW-1112 (1961) (concluding that legislature controls method of expending state textbook fund).

(a) For each subject and grade level, the State Board of Education shall adopt two lists of textbooks. The conforming list includes each textbook submitted for the subject and grade level that meets applicable physical specifications adopted by the State Board of Education and contains material covering each element of the essential knowledge and skills of the subject and grade level as determined by the State Board of Education under Section 28.002 and adopted under Section 31.024. The nonconforming list includes each textbook submitted for the subject and grade level that:

(1) meets applicable physical specifications adopted by the State Board of Education;

(2) contains material covering at least half, but not all, of the elements of the essential knowledge and skills of the subject and grade level; and

(3) is adopted under Section 31.024.

(b) Each textbook on a conforming or nonconforming list must be free from factual errors.

Section 31.024 contains additional specific instructions with respect to textbook adoption. It provides:

(a) By majority vote, the State Board of Education shall:

(1) place each submitted textbook on a conforming or nonconforming list; or

(2) reject a textbook submitted for placement on a conforming or nonconforming list.

Read together, sections 31.023 and 31.024 establish what the board *must* do with respect to *each* textbook submitted by a publisher for use in public schools. Each submitted book must be placed on the conforming list, placed on the nonconforming list, or rejected. A book is to be placed on the conforming list if it satisfies four conditions: (1) it meets board-established physical specifications, (2) it covers all of the essential knowledge and skills elements for the subject and grade pursuant to section 28.002, (3) it is adopted by a majority vote of the board under section 31.024,[3] and (4) it contains no factual errors. If a textbook covers less than all but at least half of the essential knowledge and skills elements but satisfies the physical requirements, is free of factual errors, and is

---

[3]Section 31.024 requires the board to either adopt or reject books by majority vote of the board, but does not confer any authority to establish additional adoption or rejection criteria.

adopted by a majority vote of the board, it is to be placed on the nonconforming list.[4] If a book is not eligible for either the conforming or nonconforming list, then it must be rejected.

No other criterion for placement on the textbook lists is provided in chapter 31. Nor is any other ground for rejection provided. When a statutory power is granted, and the method of its exercise prescribed, the prescribed method excludes all others and must be followed. *Foster v. City of Waco*, 255 S.W. 1104, 1105 (Tex. 1923); *Cole v. Texas Army Nat'l Guard*, 909 S.W.2d 535, 539 (Tex. App.--Austin 1995, writ denied); Attorney General Opinion JM-995 (1988) at 5; 2A SUTHERLAND STATUTORY CONSTRUCTION § 47.23 (5th ed. 1992). The content requirement rule proposed by the board would establish conditions for adoption or rejection of a textbook in addition to those specifically set out in the code, and would therefore be beyond the board's rule-making authority.

Adopted textbooks must contain materials covering the "essential knowledge and skills" for the curriculum established by the board in accordance with section 28.002. Educ. Code § 31.023. Section 28.002 sets out the minimum required curriculum for public schools. For school districts that offer kindergarten through grade 12, subsection (a) requires a "foundation" curriculum that includes English language arts, mathematics, science, and social studies consisting of Texas, United States, and world history, government, and geography. Subsection (a) also requires an "enrichment" curriculum that includes languages other than English, health, physical education, fine arts, economics ("with emphasis on the free enterprise system and its benefits"), career and technology education, and technology applications. For school districts that do not offer kindergarten through grade 12, subsection (b) requires the board by rule to "designate subjects constituting a well-balanced curriculum." Two provisions in section 28.002 address textbook selection in relation to curriculum: subsections (c) and (h).

Subsection (c) requires the board, with the direct participation of educators, parents, business and industry representatives, and employers, to "identify [by rule] the essential knowledge and skills of each subject of the foundation curriculum that all students should be able to demonstrate and that will be used in evaluating textbooks under Chapter 31." Educ. Code § 28.002(c).[5] Subsection (c) allows the board to identify the specific "essential knowledge and skills" that textbooks must teach for each curriculum subject established by the legislature in subsection (a). It does not allow the board to establish general textbook content requirements.

---

[4] For subjects in the foundation curriculum, local school districts and open-enrollment charter schools must select textbooks from either the conforming or nonconforming list in order to have the textbooks fully paid for by the state. For subjects in the enrichment curriculum, schools may select textbooks that do not appear on either list, but the schools will be reimbursed for only 70 percent of the cost of the books. Educ. Code § 31.101. A school district or open-enrollment charter school may use *local* funds to purchase any textbook it likes. *Id.* § 31.106.

[5] We note that subsection (d), requiring the board to identify the essential knowledge and skills for *enrichment* curriculum, makes no reference to textbook adoption. *Id.* § 28.002(d).

The second provision in section 28.002 addressing textbook selection in relation to curriculum is subsection (h). Subsection (h) states:

> The State Board of Education and each school district shall foster the continuation of the tradition of teaching United States and Texas history and the free enterprise system in regular subject matter and in reading courses and in the adoption of textbooks. A primary purpose of the public school curriculum is to prepare thoughtful, active citizens who understand the importance of patriotism and can function productively in a free enterprise society with appreciation for the basic democratic values of our state and national heritage.

The code does not define the term "foster" or prescribe the manner in which the board and school districts may implement this provision. Nor does the "primary purpose" language mandate or direct any action by the board with respect to textbook selection. We believe that subsection (h) is intended to serve as an indication of legislative policy and a guide for the board and school districts in formulating their curriculum, and that it does not confer any additional power to the board with respect to textbook adoption. The "primary purpose" language is identical to the language in former section 21.101(d), which read:

> (d) Local instructional plans may draw upon state curriculum frameworks and program standards as appropriate. The responsibility for enabling all children to participate actively in balanced curriculum which is designed to meet individual needs rests with the local school district. Districts are encouraged to exceed minimum requirements of the law. A primary purpose of the public school curriculum is to prepare thoughtful, active citizens who understand the importance of patriotism and can function productively in a free enterprise society with appreciation for the basic democratic values of our state and national heritage.[6]

It appears that the intent of the "primary purpose" language in section 21.101(d) was to give school districts some guidance in formulating their local curriculum plans. The former subsection made no reference to textbook adoption. We believe the current provision similarly is a guide for the board in formulating curriculum, not textbook content standards.

It has been argued that the proposed content guidelines could be adopted pursuant to section 31.022, which provides, in pertinent part:

> (b) The board shall adopt rules to provide for a full and complete investigation of textbooks for each subject in the foundation curriculum at

---

[6] Act of May 25, 1981, 67th Leg., R.S., ch. 274, § 1, 1981 Tex. Gen. Laws 727, 727.

least every six years. . . .

(c) The board shall adopt rules to provide for a full and complete investigation of textbooks for each subject in the enrichment curriculum on a cycle the board considers appropriate.

We do not believe that section 31.022 gives the board authority to adopt the proposed content guidelines as part of their "full and complete investigation" of textbooks. The board's investigation is limited to consideration of the criteria for textbook adoption set out in the code: physical specifications, essential knowledge and skills elements, and factual errors.

The revised code's specific instructions to the board with respect to textbook selection are consistent with the code's reduction of the board's overall authority in the governance of public schools. The former code gave the State Board of Education broad powers. The board was authorized to "take actions necessary to implement legislative policy for the public school system." Act of June 5, 1990, 71st Leg., 6th C.S., ch. 1, § 2.06, 1990 Tex. Gen. Laws 1, 13. With respect to textbook selection, the board had great discretion. The former code allowed the board to select any textbooks "which in the opinion of the board [were] most acceptable for use in the schools." Act of May 31, 1969, 61st Leg., R.S., ch. 889, § 12.24, 1969 Tex. Gen. Laws 2735, 2779. The board could consider quality, mechanical construction, paper, print, price, authorship, literary merit, and "other relevant matters" in making its selections. *Id.* In fact, consideration of textbook content was an express responsibility of the board: "The State Board of Education shall adopt rules to provide for a full and complete investigation of all books and accompanying bids and for an opportunity for members of the public to comment *in regard to textbook content* or in support of or against any textbook presented." Act of April 7, 1983, 68th Leg., R.S., ch. 13, § 10, 1983 Tex. Gen. Laws 83, 90 (emphasis added). At least one content requirement was specifically expressed: "No book adopted shall contain anything of a partisan or sectarian character." Act of May 31, 1969, 61st Leg., R.S., ch. 889, § 12.14, 1969 Tex. Gen. Laws 2735, 2775.

No such broad authority over textbook adoption or specific control over content is found in the new Education Code. When the legislature amends a statute and omits language of the former statute in its amended version, the legislature is presumed to have intended to change the law. *See Gateley v. Humphrey*, 254 S.W.2d 98, 101; *State v. Eversole*, 889 S.W.2d 418, 425 (Tex. App.-- Houston [14th Dist.] 1994, pet. ref'd); 1A SUTHERLAND STATUTORY CONSTRUCTION § 22.30 (5th ed. 1992). In great contrast to its former authority, the board's powers are now expressly limited, and powers not assigned to the board are reserved to local school districts. *See* Educ. Code § 7.003, .102.

We also find support for our conclusion in the legislative history of Senate Bill 1. The bill as introduced by Senator Ratliff completely removed textbook selection power from the board. S.B. 1, 74th Leg., R.S. (1995) (introduced version). During consideration on the senate floor, Senate Bill 1 was amended to allow the board to approve textbooks that "contain the essential elements of the

subject" and were "free of factual errors." S.J. of Tex., 74th Leg., R.S. 773-83 (1995) (Floor Amendment No. 44). Also adopted was a textbook content provision requiring approved books to be "free of language that refers to one or more specific racial groups and that, in the opinion of the board, considering the context in which the language occurs, is derogatory or malicious and has no educational purpose appropriate to the age of the student." S.J. of Tex., 74th Leg., R.S. 788 (1995) (Floor Amendment No. 44G). The conference committee on Senate Bill 1 adopted the House of Representative's version of the bill, which contained the conforming and nonconforming list scheme but eliminated the content requirement regarding racial groups, further evidence of the legislature's intent to limit the board's review of textbooks to the criteria listed in section 31.023.

We reviewed correspondence from members of the Seventy-fourth Texas Legislature stating that they did not intend Senate Bill 1 to remove the board's authority to adopt general content requirements. Post-enactment statements of legislators, however, do not form part of the legislative history of provisions that may be taken account of in their construction. *General Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993), *cert. denied*, 510 U.S. 985 (1993); Attorney General Opinion DM-321 (1995) at 1 n.1; (citing 2A Norman J. Singer, STATUTES AND STATUTORY CONSTRUCTION § 48.16 (5th ed. 1992)).

Members of the legislature have also made post-enactment statements that they intended the board to retain power over textbook selection. We note that the board *does* retain power over textbook selection. The board establishes curriculum requirements, screens books for quality and factual errors, and enters into contracts with publishers. However, the board may exercise authority over textbook selection only within the scope of the power granted to it by the legislature. We conclude that the power granted to the board in the revised Education Code does not include authority to adopt the proposed rule prescribing textbook content.

## Ancillary Materials

You also ask several questions regarding the board's authority with respect to "ancillary" items provided by textbook publishers free of charge to school districts. Your questions are:

> Does the Board's authority to adopt or reject textbooks extend to consideration of ancillary items?

> Do all materials which a publisher provides a school district come within the definition of "textbook" [under] section 31.002(3) or may a publisher choose what materials are submitted for consideration under Section 31.023?

> May the Board reject a textbook submitted for consideration because of the nature of an ancillary item which has not been submitted?

"Textbook" is defined broadly in the revised Education Code as "a book, a system of instructional materials, or a combination of a book and supplementary instructional materials that conveys information to the student or otherwise contributes to the learning process, or an electronic textbook." Educ. Code § 31.002(3). The only reference to "ancillary" materials in the Education Code is in section 31.151, which requires textbook publishers and manufacturers to provide any "textbook or ancillary item" free of charge in Texas to the same extent that it is provided free of charge to any other state, school or school district in the United States. *Id.* § 31.151(a)(3). Given the ordinary meaning of ancillary--which is synonymous with "subordinate," "auxiliary," and "supplementary"[7]--ancillary materials would appear to come within the broad definition of "textbook," which includes "supplementary instructional materials." *Id.* § 31.002(3). However, the reference to ancillary items in section 31.151 suggests that the legislature envisioned that items not within the definition of "textbook" may be supplied by publishers to schools.

The textbook adoption and purchasing laws in chapter 31 of the code do not refer to ancillary materials. Textbooks are to be adopted or rejected from the books *submitted* to the board. *Id.* §§ 31.023, .024. Furthermore, the purpose of chapter 31 is to provide for a system of selecting *state funded* textbooks. The state will pay only for approved books, but districts are free to use local funds to purchase any book they choose. *Id.* § 31.106. Nothing in the code prohibits districts from acquiring books free of charge. Therefore, we do not believe that the board's authority to adopt or reject textbooks extends to consideration of ancillary items provided to school districts free of charge. Because the board is to select or reject textbooks from the books *submitted*, we believe that the submitting party may determine what materials are to be included for review. Only the materials submitted to the board may be the basis for adoption or rejection of a textbook.

---

[7]WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 84 (1983).

## S U M M A R Y

The State Board of Education has no authority under the Texas Education Code to adopt rules regarding the content of state-approved textbooks establishing criteria for approval beyond the criteria contained in section 31.023 of the Education Code. The board's authority to adopt or reject textbooks does not extend to consideration of ancillary items provided to school districts free of charge.

Yours very truly,

**DAN MORALES**
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Barbara Griffin
Assistant Attorney General