LITTLE, District Judge,
dissenting:
Today the majority concludes that the presumed benefits generated through the creation of “model codes” require that it strike the balance in favor of permitting the model code creator to continue to enforce its copyright, even after such a code has been adopted into law. In my view, once a “model code” is adopted into law by the government, a private entity, such as SBCCI, may no longer obstruct publication and transmission of the law by an uncompensated transferor. Adoption of the model code as law serves to place the law in the public domain and it should, therefore, be readily available for access by all citizens. The access should not be limited to a non-public commercial establishment. Similarly, upon enactment, the law transforms into an “idea” that is no longer distinguishable from its expression, causing SBCCI’s codes to lose their copyright protection. It is my belief that reversal of the district court judgment is appropriate. I respectfully dissent from the decision of the majority.

A. Due Process/Public Domain Basis

The majority places great emphasis on the district court’s conclusion that no probative evidence exists demonstrating that the codes are not publicly available in Noi’th Texas towns. This conclusion, even if factually accurate, is not determinative. The question, in my estimation, is not whether Veeck, or any other citizen, actually was prevented from viewing the public law, but whether a private entity that develops a code may maintain private control of that law through a copyright.
As the majority correctly observes, not all reproductions of copyrighted work are “within the exclusive domain of the copyright owner; some are in the public domain.” Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 433, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984). It is well settled that judicial opinions and statutes are in the public domain and are not sub *412 ject to copyright. As the Supreme Court enunciated in Banks, there exist two independent rationales for holding judicial opinions and statutes (and in my opinion, regulations), outside the realm of copyright. While I agree with the majority as to the inapplicability of the first, the “public funds rationale,” I strenuously disagree with the majority’s disregard of the second, the “public policy/due process” rationale. I also am unable to adopt a meaningful distinction between judicial opinions and statutes, and the regulations that have been promulgated and adopted into law as binding on the citizens of a given community. Today’s holding creates a distinction that cannot be sustained.
In Banks, the Supreme Court declined to enforce the state reporter’s copyright of judicial opinions because “[t]he whole work done by judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all.” Banks, 128 U.S. at 253, 9 S.Ct. at 40; see also BOCA, 628 F.2d at 734-35 (expressing doubt that a private entity that developed a building code was entitled to enforce copyright after the code was enacted into public law on the basis that the public owns the law because it pays the salary of those who draft legislation and the public has the “right to know the law to which it is subject”). Here, ■SBCCI seeks to prevent an individual from posting, on an internet web site, a copy[1] of an enacted administrative regulation. The administrative regulation, primarily a building and zoning code, is binding on the public. Sanctions may follow noncompli-anee. Like a statute, a locality’s building regulations are “the authentic exposition” of the law, which the Banks Court indicated should be “free for publication to all.” Banks, 128 U.S. at 253, 9 S.Ct. at 40.
The First Circuit has indicated its approval of this reasoning in a case presenting facts similar to those we measure today. In BOCA, the plaintiff, Building Officials and Code Administration (“BOCA”), another code-writing organization, claimed copyright protection for its model building code, which it encouraged public • authorities to adopt through a licensing program. See BOCA, 628 F.2d at 732. The Commonwealth of Massachusetts adopted and distributed a building code substantially similar to BOCA’s model code, pursuant to a licensing agreement with BOCA. See id. Massachusetts then referred persons seeking to purchase a copy of the code to BOCA. See id. The defendant, Code Technology, Inc. (“CT”), a private publisher, published, and distributed its own edition of the Massachusetts building code. CT’s edition was almost identical to BOCA’s edition. See id. Relying on Banks and Wheaton, CT argued that because BOCA’s code was adopted by the state as a set of administrative regulations having the force of law, it had lost its copyright protection and thus entered the public domain. See id. at 733. BOCA retorted that the building code differed from judicial opinions and statutes because it was written by a privately funded entity and *413 not by the government using public funds. See id.
Although the First Circuit declined to rule on the ultimate merit of the plaintiffs case, in vacating the district court’s grant of a preliminary injunction to the copyright holder, it noted that it was “far from persuaded that [the plaintiffs] virtual authorship of the Massachusetts building code entitles it to enforce a copyright monopoly over when, where, and how the Massachusetts building code is to be reproduced and made publicly available.” Id. at 735. The court reasoned that the public “owns the law” not just because it pays the salaries of those who write the statutes and judicial opinions, but because “[t]he citizens are the authors of the law.” Id. at 734. The court also determined that due process guarantees access to the law because it requires notice of legal obligations. See id. It then expressed doubt that due process would allow a private entity to limit access under the copyright law, and to decide for itself when, where, and how the code was to be reproduced and made publicly available. See id. at 735. The court ultimately declined to decide the issue, however, remanding to the district court for further proceedings. See id. at 736.[2] Finding the BOCA analysis compelling, I conclude that a privately developed code is no longer entitled to copyright protection once it enters the public domain.
The majority contends that refusal to enforce SBCCI’s copyright would result in a departure from the prior decisions of our sister circuits. On close inspection of those cases, it appears to me that no other circuit has addressed a substantively similar situation to the one before us today. The result I favor would not, therefore, be in discord with the decisions of our sister circuits. Practice Management did not reject, outright, the viability of a public domain defense to copyright infringement. In that case, the Ninth Circuit declined to find that the “public domáin” argument supported a publisher’s attempt to produce its own copy of. a medical coding system developed and copyrighted by the American Medical Association, that had been adopted by the federal Health Care Financing Administration for use in Medicare and Medicaid claim forms. See Practice Management, 121 F.3d at 517. I note that in Practice Management, the party challenging the copyright was a private entity seeking to “share in AMA’s statutory monopoly.” Id. at 519. Had the Ninth Circuit in Practice Management been faced with a situation similar to that presented here — where a private individual sought to publish gratuitously a public law for use by other citizens, rather than an instance where a private company sought to invalidate a copyright for its own commercial purposes — it may have decided differently.
It is also apparent that the Practice Management court was chary to apply the public domain rationale to defeat a copyright based on the concern that invalidating the AMA’s copyright “would expose copyrights on a wide range of privately authored model codes, standards, and reference works to invalidation.” Id. The Ninth Circuit warned that “ ‘[t]o vitiate copyright, in such circumstances, could, without adequate justification, prove destructive to the copyright interest in encouraging creativity,’ a matter of particular significance in this context because of ‘the increasing trend toward state and federal adoptions of model codes.’ ” Id. at 518 (citing 1 Nimmer § 5.06[C], at 5-92 (1996)). Similarly, in CCC Information Services, the Second Circuit declined to employ the public domain concept to invalidate a copyright of a car valuation system that had been adopted into some states’ insurance codes. The CCC Information *414 Services court based its ruling on a public policy-based concern for the ramifications to the copyright holder should the holder be forced to give up its copyright in every instance where the state adopted or referenced its work. See CCC Info. Servs., 44 F.3d at 73-74. Utter disregard of the majority’s, as well as the Second and Ninth Circuits’, expressed trepidation regarding the viability of standards-writing organizations is not lightly employed.[3] Neither the Second nor the Ninth Circuit, however, was presented with a situation where a private individual sought to publish the law for the sole purpose of sharing it with other citizens. The factual scenario brought before this court leads me to evaluate the public domain rationale in a light different from that utilized by these Circuits. When I balance the protection of original works versus the protection of the public’s due process interest, I come down in favor of the public’s ability to access the law without private constraints.
The extent of SB CCI’s control over a regulation binding on the public further fortifies Veeck’s assertion that a private entity should not be the sole gatekeeper to the public’s laws despite the fact that here, copies were available to individuals at city hall or local libraries. The transformation of SBCCI’s privately created work into a public law provides grounds to invalidate SBCCI’s copyright to the extent that its code is enacted into law. Following along the lines of the reasoning of the First Circuit in BOCA, I conclude that the due process concern for public access to the law forbids a private entity from exerting sole control over a public law through a copyright. Consequently, once enacted, the portions of SBCCI’s codes that become law enter the public domain and are no longer entitled to copyright protection.

B. Merger and the Idea/Expression Dichotomy

The reasoning implemented in the due process/public domain section of this dissent is sufficient to bolster reversal. Reversal could also be predicated on another, equally potent basis. Veeck has asserted that once adopted, SBCCI’s codes become facts that are not protected under the Copyright Act. Further, because the exact language is critical to an enacted law’s meaning, the “idea” embodied in the law merges with SBCCI’s unique expression. In that case, the copyright becomes unavailing to its owner. SBCCI retorts that citizens are able to produce their own version of the information contained in the model codes and that it is only its particular expression that is protected by the Copyright Act. The district court rejected Yeeck’s merger argument, finding that the subject of building codes is open to multiple forms of expression. The majority has affirmed this conclusion.
As a preliminary matter, copyright protection is not extended to facts, procedures, processes, methods of operation, or information in the public domain. See 17 U.S.C. § 102(b); Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. at 350, 111 S.Ct. at 1290; Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 547-48, 105 S.Ct. 2218, 2223-23, 85 L.Ed.2d 588 (1985); Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 533 (5th Cir.1994). Similarly, a copyright protects the expression of ideas, not the ideas themselves. See Kepner-Tregoe, 12 F.3d at 533. “[I]n order to protect the immunity of ideas from private ownership, when the expression is. essential to the *415 statement of the idea, the expression also will be unprotected, so as to insure free public access to the discussion of the idea.” CCC Info. Servs., 44 F.3d at 68. Where an idea is susceptible only to one form of expression, the merger doctrine applies and the expression will not be protected by the Copyright Act. See 17 U.S.C. § 102(b); Kepner-Tregoe, 12 F.3d at 533; Mason v. Montgomery Data, Inc., 967 F.2d 135, 138-40 (5th Cir.1992). This “idea/expression dichotomy *strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author’s expression.’” Harper & Row, 471 U.S. at 556, 105 S.Ct. at 2228 (citing, with approval, the Second Circuit’s discussion of the copyright protection afforded to an idea versus its expression in Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 203 (2d Cir.1983)). There is no bright-line test for determining whether an idea is distinguishable from its expression. The merger, or lack of it, should be determined based on the facts of the case. See Country Kids ’N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1285 (10th Cir.1996). It is appropriate for the court to incorporate policy choices into its merger analysis, including the public’s interest in free access to the law. See CCC Info. Servs., 44 F.3d at 68.
I agree with the majority that prior to adoption by local municipalities, SBCCI’s model codes are entitled to copyright protection. Although no court has held decisively that the merger doctrine may be used to invalidate a copyright in a privately developed code that is enacted into law, there is merit to Veeck’s argument that once enacted, the codes do become a fact or idea, in that there is only one accurate way to express an enacted law. The majority fails to explain how, once a model code is adopted as law, either in whole or in part, there exists any other way of expressing the law.[4] In CCC Information Services, the Second Circuit declined to invalidate the plaintiffs copyright interest in its Red Book car valuation that had been adopted into the state’s insurance code, but explicitly acknowledged that the defendant’s merger argument “is not easily rebutted.” Id. at 68. The Second Circuit ultimately rejected the merger doctrine based on “the need, where elements of the copyright law conflict, to determine, as a policy judgment, which of its commands prevails over the other.” Id. The court concluded that the fundamental principle of copyright' law of granting authors exclusive rights to their writings outweighed the policy benefit of preserving public access to ideas. See id. at 68-72. Here, I conclude that the policy benefit of preserving unfettered public access to the law outweighs the interest of permitting the holder of a copyright in a “model code” to maintain that copyright subsequent to the code’s adoption into law.
By its very nature, an enacted law enters the public realm as a concrete, definite fact/idea. There is only one accurate way to express a law. Courts consistently stress that, as a preliminary matter, the exact words of a statute govern its interpretation. See, e.g., Kennedy v. Texas Utils., 179 F.3d 258, 261 (5th Cir.1999) (“ ‘The starting point for interpreting a statute is the language of the statute itself.’ ” (citing Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980))); City of Sherman v. Pub. Util. Comm’n, 643 S.W.2d 681, 684 (Tex.1983) (“Generally the intent and meaning [of the *416 legislature] is obtained primarily from the language of the statute” (citing Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 88 S.W.2d 929, 934 (Tex.1935))). The importance of examining the precise language of a statute in order to glean its meaning demonstrates the concrete, inflexible nature of a statute’s language once it is enacted into law. The same concept applies to an administrative regulation, such as a building code. An individual attempting to gain access to the building code of Anna or Savoy, Texas has only one choice — it must view the enacted version of SBCCI’s model code. This is a case where the merger doctrine is especially appropriate because other methods of expressing the idea are foreclosed. See Educ. Testing Servs. v. Katzman, 793 F.2d 533, 539 (3d Cir.1986) (citing Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1253 (3d Cir.1983)). An individual wishing to publish the text of a law cannot develop his own, unique version and still publish an authoritative copy.
Moreover, it is antithetical to our nation’s concept of public participation for a private entity to monopolize the public laws. See generally Kepner-Tregoe, 12 F.3d at 533 (justifying the merger doctrine on the basis that no one should be given a monopoly over an idea). Congress could not have intended for a private organization to be given the exclusive right to control others’ ability to copy and distribute an enacted law. Even the towns themselves apparently keep relevant portions of the SBCCI code as the official version.
I am not dissuaded from applying merger in this case by the Second Circuit’s opinion in CCC Information Services. That court did not discuss, with any detail, the issue of whether a copyrighted work would merge with its underlying idea when enacted into law. Instead, the court was concerned with whether the ideas expressed in a compilation of informational matter were entitled to copyright protection. Here, in contrast, our focus is on the adoption of the copyrighted work into law. I would agree with Veeck that once adopted, SBCCI’s model code becomes a concrete fact that is outside the realm of copyrightable works under section 102(b) of the Copyright Act. See Feist, 499 U.S. at 356, 111 S.Ct. at 1293 (explaining that section 102(b) is “universally understood to prohibit any copyright in facts”). This same consideration convinces me that once SBCCI’s code is enacted by reference into law, the “ideas” embodied in the law merge with SBCCI’s original creation, causing the model code to lose its copyright protection.
SBCCI spends thousands of hours developing its codes, providing a valuable service to governments that choose to adopt the model codes as their own. The majority has embraced the arguments set forth by SBCCI that its economic future will be compromised if citizens, such as Veeck, are able to post copies of copyrighted codes on the internet. This argument lacks merit. As SBCCI itself points out, private citizens are already permitted to copy SBCCI’s code from the municipality at City Hall. As such, citizens are able to avoid having to buy SBCCI’s codes from the organizations by viewing a copy at a local government office or library. It is illogical for SBCCI to argue that its viability is threatened if a private individual is able to copy the law to share with others because these others could just as easily access the information from the local government without arousing SBCCI’s protestation. The minute burden that might befall the standards-writing organizations because of the actions of Veeck and others like him is outweighed by the benefit of Veeck’s act of enhancing unfettered access to the law.
Based on the foregoing discussion, I would hold that once a “model code” is adopted into law by the government, a private entity, such as SBCCI, may no longer assert a copyright over the law’s content, for the law enters the public domain and should be readily available for access by all citizens. Further, upon en *417 actment, the law transforms into an “idea” that is no longer distinguishable from its expression, causing SBCCI’s codes to lose their copyright protection. For these reasons, I would reverse the judgment of the district court.
I respectfully dissent from the majority’s contrary conclusion.

. The majority emphasizes that Veeck copied the regulation from a clearly marked, copyrighted edition of SBCCI's model code, rather than, presumably, going to the community in question, obtaining a copy of the regulation, and retyping or scanning that document onto his website. I do not view this as material. As Justice Harlan, sitting as a circuit justice, stated over one hundred years ago, "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book be the property of the state or the property of an individual.” Howell v. Miller, 91 F. 129, 137 (6th Cir.1898) (refusing to enjoin publication of a competing compilation of state statutes and noting that it would not matter if the defendant had “cut from [the plaintiff's] books the general laws of [the State]”).
This case raises the issue of the defendant’s conduct with regard to his posting the laws of Texas towns Anna and Savoy on his website (the majority's attention to the defendant's posting of the laws of Denison, Texas notwithstanding). My review of the record below indicates that both Anna and Savoy adopted the precise version of the "model code” posted by Veeck.

. The First Circuit noted that "since the rule denying copyright protection to judicial opinions and statutes grew out of a much different set of circumstances than do these technical regulatory codes, we think BOCA should at least be allowed to argue its position fully on the basis of an evidentiary record.” BOCA, 628 F.2d at 736.

. This concern is not without merit. It is undisputed that SBCCI spends considerable time developing its codes, and thus provides a valuable service to local governments that choose to adopt the codes, either in whole or in part. The majority asserts, however, that a refusal to enforce SBCCI’s copyright could result in a loss of incentive to create municipal codes. According to the majority, that loss would result in "increased governmental costs as well as the loss of the consistency and quality to which standard codes aspire.” I disagree. SBCCI could charge a fair price to a city for code preparation, which a city could then compare to the cost of in-house preparation.

. While the majority acknowledges that “[t]he global enactment of a code does make that code the law of the enacting municipality and hence, in one sense, a 'fact,' ” it steadfastly maintains that Veeck’s use cannot be saved by the merger doctrine. The majority would, however, hold harmless certain individuals quoting certain sections of the law for a particular purpose, such as "contractors who need to use building codes.” It is difficult indeed to distinguish between this use and that of Veeck. It is beyond peradventure that Veeck posted the building codes on the internet site as a service to the general public, a class which may include contractors and home builders.