OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



January 5, 2001

Mr. Benny M. Mathis
Executive Director
Texas Structural Pest Control Board
1106 Clayton Lane, Suite 100 LW
Austin, Texas 78723-1066

Opinion No. JC-0324

Re: Whether the Texas Structural Pest Control Board may regulate contract language, and related question (RQ-0272-JC)

Dear Mr. Mathis:

As a legislatively created state agency, the Texas Structural Pest Control Board ("Board") has only those powers that the legislature has explicitly or implicitly delegated to it. *See City of Sherman v. Public Util. Comm'n*, 643 S.W.2d 681, 686 (Tex. 1983). You ask whether the Board may regulate contract language in contracts between its licensees and consumers.[1] Except for prescribing language that defines the Board's jurisdiction and that instructs consumers how to file complaints, it may not.

You also ask whether the Board may enforce a contract between its licensees and consumers. The Board has no enforcement powers, although it may, in response to a complaint from a consumer, conduct informal settlement negotiations through which the licensee may agree to comply with the contract. *See* TEX. REV. CIV. STAT. ANN. § 135b-6, § 9A (Vernon Supp. 2000).

You state that increasing numbers of consumers are asking the Board to assist "in resolving contractual issues between" the consumer and a licensee. Request Letter, *supra* note 1, at 1. "This increasing consumer concern" leads the Board to ask this office to define the Board's authority with respect to regulating and enforcing contracts between its licensees and consumers. *Id.*

We look to the Texas Structural Pest Control Act ("Act"), article 135b-6 of the Texas Revised Civil Statutes, which establishes and empowers the Board, to delineate the Board's authority. *See* TEX. REV. CIV. STAT. ANN. art. 135b-6, § 1 (Vernon Supp. 2000) (entitling Act); *Baker v. Guaranty Nat'l Ins. Co.*, 615 S.W.2d 303, 305 (Tex. Civ. App.–Austin 1981, writ ref'd n.r.e.) (stating that Act created Board and charged Board with certain responsibilities). As an administrative agency created by the legislature, the Board has only those powers that are expressed in a relevant statute or necessarily implied from the statute. *See Grace v. Structural Pest Control Bd.*, 620 S.W.2d 157, 160 (Tex. App.–Waco 1981, writ ref'd n.r.e.) (finding implied authority in Act

---

[1]*See* Letter from Benny M. Mathis, Executive Director, Texas Structural Pest Control Board, to Honorable John Cornyn, Texas Attorney General (Aug. 18, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

to appoint hearing examiner); *Baker*, 615 S.W.2d at 305-06 (refusing to read Act to imply judgement-bond requirement); *see also Ratcliff v. National County Mut. Fire Ins. Co.*, 735 S.W.2d 955, 958 (Tex. App.–Dallas 1987, writ dism'd w.o.j.) (citing *Baker* for proposition that Act's insurance requirements may not be read to render unenforceable policy-notice provisions). *See generally City of Sherman*, 643 S.W.2d at 686 (stating that agency may exercise only those powers granted by statute, together with those necessarily implied from statutory authority conferred or duties imposed); Tex. Att'y Gen. Op. Nos. JC-241 (2000) at 3 (same); JC-204 (2000) at 3 (same).

Under the Act, the Board's jurisdiction encompasses each individual and entity "engaged in the business of structural pest control" by advertising for, soliciting, or performing certain pest-control services for compensation. *See* TEX. REV. CIV. STAT. ANN. art. 135b-6, § 2(a) (Vernon Supp. 2000). These pest-control services include "making contracts, or submitting bids for, or performing services designed to prevent, control, or eliminate" infestations of "obnoxious or undesirable animals," including arthropods, wood-infesting organisms, rodents, and nuisance birds; weeds; and pests or diseases of trees, shrubs, or other plantings "by the use of insecticides, pesticides, rodenticides, fumigants, or allied chemicals or substances or mechanical devices." *Id.*

The Board has express statutory authority to perform several tasks, including:

- to "develop and implement policies that provide the public with a reasonable opportunity to appear before the board and to speak on any issue" under the Board's jurisdiction, *id.* art. 135b-6, § 3(k) (Vernon Supp. 2000);

- to develop "standards and criteria" for licensing individuals, persons, and technicians engaged in the business of structural pest control, and for certified noncommercial applicators, *see id.* §§ 4(a), (b), (c), 4B(e); *see also id.* §§ 4A (requiring Board to develop technician training program), 4C(a)(1) (requiring Board to adopt policy requiring inspection of structural pest control businesses), 7B (authorizing Board to require licensee to make records of pesticide use), 9 (permitting Board to refuse to license, to revoke or suspend license, or to discipline licensee);

- to "promulgate rules and regulations governing the methods and practices of structural pest control when it determines that" the rules are necessary "to prevent adverse effects on human life and the environment," *id.* § 4(d);

- on finding that pesticides have been misapplied, to "keep records of health injuries and property damages" that result from the misapplication, *id.* § 4D(a);

- on the request of a consumer, to provide a pretreatment inspection to verify that pests have infested the premises, *see id.* § 4E(a), (b), (c);

- to resolve a complaint (other than a complaint involving misapplication) by a consumer against a licensee, *see id.* § 9A; and

- to penalize a person who violates the Act or a rule or order adopted by the Board, *see id.* § 10B(a).

We conclude that the Board's authority to regulate contract language is limited to that provided in sections 4(h) and 4F. The Board's general authority to protect public health and safety does not encompass authority to regulate contract language. *See, e.g., id.* §§ 4D, 4F(h), 4G, 4H. Only two sections of the Act even suggest that the Board may regulate certain contract language. First, "[i]n each written contract in which a licensee . . . agrees to perform structural pest control services in this state," section 4(h) of the Act requires the licensee to "include the mailing address and telephone number of the board and a statement that the board has jurisdiction over individuals licensed under this Act." *Id.* § 4(h). Second, section 4F(b)(1) of the Act permits the Board to require that every written contract for the services of an individual or entity regulated by the Act notify consumers of the method by which the consumer or "service recipient[]" may complain to the Board regarding the purchased structural pest control. *See id.* § 4F(b)(1). Beyond the authority granted in sections 4(h) and 4F of the Act, the Board has no authority to regulate the language of contracts between its licensees and consumers.

You ask next about the Board's authority to enforce a contract between a licensee and a consumer. *See* Request Letter, *supra* note 1, at 1. You do not explain what you mean by the term "enforce."

The Board has no statutory authority to require a licensee to perform services he or she contracted with a consumer to perform. Rather, the Board may "revoke or suspend [the] license [of], place on probation, . . . or reprimand" a licensee who violates the Act or a Board rule. *Id.* § 9(b) (Vernon Supp. 2000). The Board also may assess an administrative penalty against a person who violates the Act or a Board rule. *See id.* § 10B(a).

Although the Board may not compel a licensee to agree to fulfill his or her contractual duties, the Board may oversee settlement negotiations that result in a settlement requiring the licensee to fulfill contractual duties. In response to a complaint from a consumer, the Board may appoint representatives to conduct informal settlement negotiations to resolve a contested case under the Administrative Procedure Act, chapter 2001 of the Government Code. Section 9A of the Act authorizes the board to "conduct informal settlement negotiations between the board and a licensee to resolve a complaint, other than a complaint involving a misapplication, between a consumer against the licensee." *Id.* § 9A(a), (c). "Any informal settlement . . . may not require the licensee to refund money to the consumer in an amount greater" than the original contract specifies or "to perform any services that the licensee had not agreed to perform in the original contract." *Id.* § 9A(c).

## S U M M A R Y

Except for language describing its jurisdiction and instructing consumers how to file a complaint, the Texas Structural Pest Control Board may not regulate the language of contracts between structural pest control service providers and consumers. *See* TEX. REV. CIV. STAT. ANN. art. 135b-6, §§ 4(f), 4F(b)(1) (Vernon Supp. 2000). The Board may not require a licensee to perform services he or she contracted with a consumer to perform, although the Board may oversee informal settlement negotiations in which the parties agree to perform the contract. *See id.* § 9A(c).

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee