# IN THE SUPREME COURT OF TEXAS

No. 13-0593

TEXAS STUDENT HOUSING AUTHORITY, PETITIONER,

v.

BRAZOS COUNTY APPRAISAL DISTRICT AND APPRAISAL REVIEW BOARD FOR
BRAZOS COUNTY APPRAISAL DISTRICT, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

**Argued December 10, 2014**

JUSTICE WILLETT delivered the opinion of the Court.

Many university campuses remain abuzz during the summer months, hosting various sports and other extracurricular camps for kids and teens. This property-tax dispute poses a question of first impression: whether a dormitory-like facility owned by a "higher education facility authority" forfeits its statutory property-tax exemption by providing summer housing to non-college students attending university-sponsored instructional programs.

The appraisal district contends the exemption imposes an exclusive use/benefit condition—meaning summer campers' use of otherwise vacant rooms defeats the property's tax-exempt status. We need not decide whether housing aspiring golfers, doctors, or cheerleaders violates statutory conditions—because there are no statutory conditions. The exemption is stated categorically, not conditionally. As worded, the exemption does not turn on whether a university hosts short, on-campus instructional programs. Although the housing authority may be subject to certain

limitations affecting its ability to further the university's broad educational mission—terrain we do not reach today—the exemption statute is not one of them.

We reverse the court of appeals' judgment insofar as it denies tax-exempt status, and render judgment for Texas Student Housing Authority (TSHA).

## I. BACKGROUND

The relevant facts are undisputed.

The town of Westlake created the nonprofit TSHA in 1995.[1] TSHA's bylaws provide that it "shall have all of the powers and authority granted to an authority under the Higher Education Authority Act."[2] In 2002, TSHA acquired title to the Cambridge at College Station, a student-residential facility near the campuses of Texas A&M University (TAMU) and Blinn College.

TAMU is an "[i]nstitution of higher education,"[3] and TAMU's board of regents[4] is charged with (1) making "bylaws, rules, and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services," and (2) "regulat[ing] the course of study and prescrib[ing] the course of discipline necessary to enforce the faithful discharge of the duties of the officers, faculty, and students."[5] Like many universities, TAMU hosts various short-term extracurricular and enrichment programs for high school and elementary

---

[1] *See* TEX. EDUC. CODE § 53.11 ("When the governing body of a city finds that it is to the best interest of the city and its inhabitants to create a higher education facility authority, it shall pass an ordinance creating the authority and designating the name by which it shall be known.").

[2] *See id.* § 53.01 ("This chapter may be cited as the Higher Education Facility Authority for Public Schools Act."), *et. seq.*

[3] *See id.* §§ 53.02(5) ("'Institution of higher education' means any institution of higher education as defined by Subdivision 8 of section 61.003."), 61.003(8) ("'Institution of higher education' means any public technical institute, public junior college, public senior college or university, medical or dental unit, public state college, or other agency of higher education as defined in this section."), 61.003(6) ("'Other agency of higher education' means . . . Texas A & M University System. . . .").

[4] The Education Code uses the term "board of directors" synonymously. *See id.* §§ 85.11, 86.02.

[5] *Id.* § 85.21. *See also id.* § 85.11.

2

students. In the summers of 2005–2008, TSHA provided lodging at the Cambridge to participants in TAMU-sponsored summer camps.[6] This housing was in addition to that provided to traditional university students who stayed at the Cambridge while attending regular summer school at either TAMU or Blinn College. TSHA's executive director testified that TSHA could have closed the Cambridge for the summer, but that TSHA would have been unable to keep the Cambridge open for summer school students without boosting the Cambridge's occupancy by housing the summer camp participants.

TAMU's 2005–2008 summer programs included the 4-H Roundup,[7] the Joint Admission Medical Program,[8] and various athletic camps. The athletic camps included tennis, volleyball, swim, and golf camps conducted directly by TAMU's Athletic Department, a hockey camp conducted by Hockey Ministries International Hockey Camp,[9] and a cheerleading camp conducted by the UCA Cheer Camp.[10] With the exception of participants in the Joint Admission Medical

---

[6] During the rest of the year, TSHA used the Cambridge to house only persons enrolled at TAMU or Blinn College.

[7] The 4-H roundup is organized and administered by the Texas 4-H and Youth Development Program service of the Texas Agricultural Extension Service.

[8] The Joint Admission Medical Program is a program created by statute to "provide services to support and encourage highly qualified, economically disadvantaged students pursuing a medical education." *Id.* § 51.822. Participants in the Joint Admission Medical Program are all enrolled at one of the participating Texas colleges and universities and have completed at least 27 credit hours as a college freshman. *See id.* §§ 51.826(a)(1), (3), 51.821(4).

[9] Hockey Ministries International is a Christian charity registered in Canada and the United States. Although the hockey camp was not conducted directly by TAMU's Athletic Department, the TAMU Recreational Sports Department and the TAMU Men and Women's Hockey Clubs sponsored the camps. Team members from the men and women's club teams at TAMU served as counselors, and at least one of the TAMU hockey coaches participated in the camp each year. Hockey Ministries International does not profit from the camps or the use of the Cambridge as Hockey Ministries International's expenses in conducting the camps exceed the revenues received by the organization, which relies on donations to cover the shortfall.

[10] UCA is an assumed name of Varsity Spirit Corporation, a Tennessee for-profit corporation that provides training for college and high school cheerleaders. TAMU's Recreational Sports Department sponsored the UCA Cheer Camps at TAMU, receiving revenues and generating a profit from its association with UCA Cheer Camp.

Program, most of the summer camp participants had not yet graduated high school. The parties stipulated that none of the programs conducted instructional activities at the Cambridge itself.

The various camps utilized different payment structures for TSHA's provision of housing. The Texas Agricultural Extension Service made arrangements with and paid fees directly to TAMU for the use of campus facilities for the 4-H Roundup. TSHA sent invoices directly to TAMU for the housing provided for the Joint Admission Medical Program and the athletic camps conducted directly by TAMU's Athletic Department. TSHA billed Hockey Ministries International and UCA Cheer Camp directly.

Citing the Cambridge's housing of these summer campers, the Brazos County Appraisal District (BCAD) voided TSHA's tax-exempt status for the years 2005–2008, and assessed millions of dollars in back taxes. TSHA unsuccessfully protested, then sought judicial review, arguing it was entitled to the exemption provided by the Education Code, and alternatively, the Tax Code.

The trial court affirmed BCAD's denial of exempt status, holding that TSHA forfeited the exemption once the Cambridge hosted "persons who were not students, faculty or staff members of an institution of higher learning." The trial court concluded that making the property available, even at TAMU's request, for short-term housing of participants in various university-sponsored summer programs violated conditions on which the exemption was premised.

TSHA appealed, and BCAD again contended that TSHA, by providing lodging to participants in summer camps bearing the imprimatur of TAMU sponsorship, could not satisfy the exemption's requirement that the property be "devoted exclusively to the use and benefit of the students, faculty, and staff members of an accredited institution of higher education."[11] The court of appeals reversed the denial of tax-exempt status for 2005 but affirmed for years 2006–2008.

---

[11] *See id.* § 53.46.

4

The court of appeals distinguished 2005 on the basis that the only summer programs for which TSHA housed participants at the Cambridge in 2005—the 4-H Roundup and the Joint Admission Medical Program—had "definite and intimate relationships" with TAMU, "ones which are forged or supported by legislative mandate."[12] The court of appeals also rejected TSHA's alternative contentions that the Cambridge was exempt under the Tax Code.

Both parties appealed to this Court.

## II. DISCUSSION

This is our first opportunity to address the scope of the tax exemption provided by Education Code Chapter 53. Our inquiry is straightforward: Did TSHA establish its tax-exempt status as a matter of law? We answer yes, and accordingly do not reach TSHA's alternative argument that the property is also tax-exempt under the Tax Code.[13]

### A. Standard of review

In tax-exemption cases, the claimant, here TSHA, bears the burden of "clearly showing" that it falls within the statutory exemption.[14] Tax exemptions may not "be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of taxing authority and against the claimant."[15] Moreover, when construing any statute, including tax exemptions, the truest manifestation of what lawmakers intended is what they enacted.[16] We adhere to this maxim "unless

---

[12] 440 S.W.3d 779, 788 (citing TEX. EDUC. CODE §§ 51.821 (providing for the Joint Admission Medical Program), 88.001 (listing the Texas Agricultural Extension Service as one of the agencies and services of TAMU)).

[13] TSHA contends the property is also nontaxable under section 11.11 of the Tax Code, which generally exempts from taxation (1) "property owned by this state or a political subdivision of this state" if it is "used for public purposes," and (2) property "held or dedicated for the support, maintenance, or benefit of an institution of higher education." TEX. TAX CODE § 11.11(a), (e).

[14] *N. Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991).

[15] *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271 (Tex. 1979).

[16] *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006).

5

enforcing the plain language of the statute as written would produce absurd results."[17] And we focus not on isolated words or phrases but on the statute as a cohesive, contextual whole.[18]

### B. TSHA did not forfeit its exemption under Education Code Chapter 53 by housing summer program participants at the Cambridge.

At the time TSHA acquired the Cambridge, section 53.33 of the Education Code provided that an authority "by purchase, purchase contract, or lease, may construct, or may enlarge, extend, repair, renovate, or otherwise improve educational facilities or housing facilities. [The authority] may . . . provide by contract, lease, or otherwise for the operation and maintenance of the facilities."[19] Similarly, the current version of section 53.33 provides that an authority "may acquire, own, hold title to, lease, or operate an educational facility or housing facility" if certain additional requirements are met.[20] Both housing and educational facilities are defined in terms of their use:

> "Educational facility" means a classroom building, laboratory, science building, faculty or administrative office building, or other facility *used exclusively for the conduct of the educational and administrative functions of an institution of higher education. . . .*

---

[17] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

[18] *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *see also* TEX. GOV'T CODE § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1999) ("[W]e must read the statute as a whole and interpret it to give effect to every part."); *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009) ("We determine legislative intent from the statute as a whole and not from isolated portions.").

[19] Act of May 12, 1983, 68th Leg., R.S., ch. 200, § 5, 1983 Tex. Gen. Laws 860, 862–63. Section 53.33 was amended in 2003 and 2005 to impose additional restrictions, however, those amendments provided that the changes in the law would not "affect the acquisition, ownership, construction or improvement of a facility" that was approved by official action before March 15, 2003, and that the law in effect immediately before the effective date of the amendments "is continued in effect for that purpose." Act of June 2, 2003, 78th Leg., R.S., ch. 1310, § 8, 2003 Tex. Gen. Laws 4748, 4754–55, *reenacted and amended by* Act of May 24, 2005, 79th Leg., R.S., ch. 641, § 1, 2005 Tex. Gen. Laws 1597, 1599–1601.

[20] TEX. EDUC. CODE § 53.33(a), (a) (1)–(4) (listing additional conditions, e.g., that "the facility is or will be located within the corporate limits of the city that created the authority"). The current version also expressly provides that an authority may "acquire, own, hold title to, lease, or operate . . . any facility incidental, subordinate, or related to or appropriate in connection with an educational facility or housing facility," subject to the same additional conditions imposed on housing and educational facilities. *Id.* § 53.33(a).

> "Housing facility" means a single- or multi-family residence *used exclusively for housing or boarding, or housing and boarding students, faculty, or staff members of an institution of higher learning.* The term includes infirmary and student union building, but does not include a housing or boarding facility for the use of a fraternity, sorority, or private club.[21]

In conjunction with the limited grant of authority in section 53.33, these definitions place specific restraints on an authority's ability to diversify its property holdings.[22]

Section 53.46, titled "Authority Exempt From Taxation," confers the exemption at issue here:

> Because the property owned by authority will be held for educational purposes only and will be devoted exclusively to the use and benefit of the students, faculty, and staff members of an accredited institution of higher education, it is exempt from taxation of every character.

Although BCAD concedes that TSHA properly holds title to the Cambridge, BCAD argues the exemption is not absolute but conditional and hinges upon the authority's *use* of the property. According to BCAD, the Legislature was "probably sensitive to the notion that any use of a 'housing facility' other than for students, faculty and staff, would give the authority an unfair competitive advantage over other properties that did not enjoy a tax exemption." As such, BCAD insists that, in order to qualify for the tax exemption, an authority must conclusively establish that its property is (1) "held for educational purposes only," and (2) "devoted exclusively to the use and benefit of the students, faculty, and staff members of an accredited institution of higher education."[23] We reject BCAD's reading of the statute as conditional.

---

[21] *Id.* § 53.02 (6)–(7) (emphases added).

[22] *See City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983) ("Agencies may only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed.").

[23] TEX. EDUC. CODE § 53.46.

7

Both the title and text of section 53.46 declare rather emphatically that the authority is exempt from taxation. That is, the language seems focused on *who* the property owner is, not on *how* the property is used. The provision states a presumption (about how the property is held and used) then an unconditional proclamation (the property is tax-exempt). The introductory clause isn't worded as a condition—*if* the property is so held and used, *then* it's exempt. The exemption does not speak to property being used "nonexclusively" or impose consequences for such use.[24] Rather, the statute seems to state in absolute terms that the property is, in all events, exempt.

The Legislature is well acquainted with how to condition tax exemptions on specific criteria or circumstances. The Tax Code includes numerous such exemptions, and their syntax bears no resemblance to that used in section 53.46:

- "[P]roperty owned by this state or a political subdivision of this state is exempt from taxation *if* the property is used for public purposes."[25]

- "Property of a higher education development foundation . . . is exempt from taxation *if* . . . the foundation or organization meets the requirements of Sections 11.18(e) and (f) and is organized exclusively to operate programs or perform other activities for the benefit of institutions of higher education . . . [and] the property is used exclusively in those programs or activities."[26]

- "The surviving spouse of a disabled veteran . . . is entitled to an exemption from taxation . . . *if* . . . the surviving spouse has not remarried since the death of the disabled veteran. . . ."[27]

Under these statutes—and numerous other examples[28]—"if" the entity or person fails to meet the

---

[24] *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 638 (Tex. 2010) ("Even when it appears the Legislature may have made a mistake, courts are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity.").

[25] TEX. TAX CODE § 11.11(a) (emphasis added).

[26] *Id*. § 11.11(f) (emphasis added).

[27] *Id*. § 11.131(c) (emphasis added).

[28] *See, e.g.*, *id.* §§ 11.132(c), 11.145(a), 11.181(a), 11.182(b), 11.1825(c)–(d), 11.1827(b), 11.183(a), 11.185(a), 11.23(a)–(c), (e), (g).

stated conditions, then the property is not entitled to the exemption.

By contrast, the exemption in today's case is more akin to exemption statutes that use unconditional language, such that the property is exempt "because" its use is consistent with the limited powers of the identified type of entity:

- A municipal hospital authority's "property is exempt from taxation because it is held for public purposes only and devoted exclusively to the use and benefit of the public."[29]

- "Recognizing the fact that the property owned by an [athletic stadium] authority will be held for public purposes only and will be devoted exclusively to the use and benefit of the public, it is exempt from taxation of every character."[30]

- The "property of [a municipal parking] authority is exempt from taxation."[31]

- "The property of [a municipal housing] authority is public property used for essential public and governmental purposes. The authority and the authority's property are exempt from all taxes. . . ."[32]

The gist of BCAD's proposed construction—that no non-university persons or entities may ever use the property or benefit from it—finds no home in the exemption's language. BCAD's conditional reading is foreclosed by the statute's unconditional text.

Today's decision does not mean TSHA can use its property for any purpose it chooses. "Agencies may only exercise those powers granted by statute, together with those necessarily implied from the statutory authority conferred or duties imposed."[33] An authority thus has no

---

[29] TEX. HEALTH & SAFETY CODE § 262.004 (conferring tax-exempt status on property of a hospital authority).

[30] TEX. LOCAL GOV'T CODE § 45.160 (conferring tax-exempt status on property of an athletic stadium authority).

[31] *Id.* § 601.041(conferring tax-exempt status on property of a municipal parking authority).

[32] *Id.* § 392.005 (conferring tax-exempt status on property of a municipal housing authority).

[33] *City of Sherman*, 643 S.W.2d at 686.

power to acquire, hold, or use property beyond its statutory authorization.[34] If an injured party with standing brings and proves an action seeking to confine TSHA within its statutory constraints—and BCAD sought no such relief in this case—courts may intervene to provide an appropriate remedy, such as an injunction to prevent TSHA from continuing to exceed its limited statutory authority.[35] Even if TSHA has governmental immunity—an issue we do not decide here[36]—governmental immunity would not protect its officials from suits to prevent ultra vires actions and obtain prospective relief.[37]

The denial of a tax exemption might be an appropriate additional remedy against an authority that commits its property to unauthorized or prohibited uses, de minimus or otherwise,[38] but that is a policy judgment for the Legislature, which has provided no such remedy here. Instead, the Legislature has unconditionally granted TSHA a tax exemption and presumed that TSHA will

---

[34] *See id.*; *cf. Mobil Oil Corp. v. Matagorda Cnty. Drainage Dist. No. 3*, 597 S.W.2d 910, 913 (Tex. 1980) (holding that the drainage district "acted beyond its limited powers" in "annexing lands upon which it cannot perform the services that the water code authorizes it to perform" and rendering judgment that the district's annexation order "is a nullity").

[35] *See, e.g.*, *City of Sherman*, 643 S.W.2d at 686 (upholding injunction to prevent agency from acting beyond its authority); *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978) (holding that court intervention "may be permissible when an agency is exercising authority beyond its statutorily conferred powers").

[36] Because TSHA instigated this action, we need not consider whether an authority has governmental immunity or whether an ultra vires suit would be an appropriate remedy for any arguably unauthorized use of the property, particularly as BCAD has never requested any such prospective relief. *See Harris Cnty. Hosp. Dist.*, 283 S.W.3d at 849 (holding that remand was unwarranted because Tomball Hospital Authority "never requested relief other than monetary damages" and did not "ask that we remand the case so that it may replead and request such relief").

[37] *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (holding that sovereign immunity does not apply to suits to prevent ultra vires conduct); *see also City of Dallas v. Albert*, 354 S.W.3d 368, 378–79 (Tex. 2011) (holding that only prospective relief is available in ultra vires actions (citing *Heinrich*, 284 S.W.3d at 376)).

[38] *See, e.g.*, TEX. TAX CODE § 11.18(b) ("Use of exempt property by persons who are not charitable organizations . . . does not result in the loss of an exemption authorized by this section *if* the use is incidental to use by qualified charitable organizations and limited to activities that benefit the beneficiaries of the charitable organizations that own or use the property." (emphasis added)).

use the property only for authorized purposes. In short, we need not decide whether TSHA's property meets the exemption's "conditions" because the exemption is not conditional.

Section 53.46 exempts property owned by a properly constituted higher education facility authority, and it does so unequivocally. Because BCAD does not dispute TSHA's assertion that TSHA is such an authority, the Cambridge "is exempt from taxation of every character."[39]

### III. CONCLUSION

Rules of construction require us to resolve ambiguous language in favor of the taxing entity,[40] but BCAD has not identified any language susceptible to the strained meaning it ascribes. We reject BCAD's view that TSHA forfeited its tax-exempt status under Education Code section 53.46 by housing non-college students attending TAMU-sponsored summer camps. As worded, the statute imposes no conditions but rather declares the property-tax exemption in absolute terms. The Legislature is adept at qualifying its tax exemptions, and if it wishes to disqualify properties that facilitate university-backed extracurricular programs, it can amend the statute.

We reverse the court of appeals' judgment insofar as it denies tax-exempt status for the Cambridge for any of the years at issue, and render judgment for TSHA.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** April 24, 2015.

---

[39] TEX. EDUC. CODE § 53.46.

[40] *See N. Alamo Water Supply Corp.*, 804 S.W.2d at 899; *Bullock*, 584 S.W.2d at 271–72.

11