

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

May 11, 2017

The Honorable Rodney W. Anderson
Brazos County Attorney
300 East 26th Street, Suite 1300
Bryan, Texas 77803

Opinion No. KP-0147

Re: Scope of residence homestead tax exemption in Tax Code subsection 11.13(*l*)(2)(B) (RQ-0140-KP)

Dear Mr. Anderson:

You ask for guidance on the proper construction of Tax Code subsection 11.13(*l*)(2)(B).[1] Section 11.13 generally implements the Texas constitutional provision that grants taxpayers residence homestead exemptions from ad valorem property taxes. TEX. TAX CODE § 11.13; *see also* TEX. CONST. art. VIII, § 1-b (providing for residential homestead exemptions). Subsection 11.13(j)(1) defines a "residence homestead" as

> a structure (including a mobile home) or separately secured and occupied portion of a structure . . . that:
>
> (A) is owned by one or more individuals, either directly or through a beneficial interest in a qualifying trust;
>
> (B) is designed or adapted for human residence;
>
> (C) is used as a residence; and
>
> (D) is occupied as the individual's principal residence by an owner, by an owner's surviving spouse who has a life estate in the property, or . . . by a trustor or beneficiary of the trust who qualifies for the exemption.

TEX. TAX CODE § 11.13(j)(1). A structure can retain its status as a residence homestead when the owner "temporarily stops occupying it as a principal residence," but only under certain circumstances. *Id.* § 11.13(*l*). Relevant to your question, subsection 11.13(*l*)(2)(B) provides:

> A qualified structure does not lose its character as a residence homestead when the owner who qualifies for the exemption

---

[1]*See* Letter from Honorable Rodney W. Anderson, Brazos Cty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Nov. 3, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

> temporarily stops occupying it as a principal residence if that owner does not establish a different principal residence and the absence is . . . caused by the owner's . . . *residency in a facility that provides services related to health, infirmity, or aging.*

*Id.* § 11.13(*l*)(2)(B) (emphasis added).[2] You note the absence of any statutory definition or appellate court interpretation of the phrase "facility that provides services related to health, infirmity, or aging." Request Letter at 2. You suggest that it would be reasonable to assume that assisted living and skilled care facilities would fall within the scope of subsection 11.13(*l*)(2)(B), noting that such facilities would "provide services related to health, infirmity, or aging" to residents who move there because their "safety and welfare require" it. *Id.* at 3. However, you tell us that

> there are new types of "independent living" facilities which vary greatly in services and amenities. Many people move to these types of facilities primarily because of convenience. [They] are still fully capable of living in their own homes, but do not require assistance with activities of daily living, such as feeding, dressing, moving, bathing, or other personal needs or maintenance. These independent living facilities do not usually provide any of those types of services, and do not provide direct health care or administration of medication. Instead, they generally offer a safe and maintenance-free place to live, and in many cases provide exercise rooms and services, cafeterias, housekeeping services, and transportation to shopping areas, physician's offices, etc.

> It is also not uncommon for a person to move into a 'continuing care' facility, which . . . offers three different living options -- (1) independent living, (2) assisted living, and (3) skilled care.

*Id.* You ask this office to opine on "the proper factors that should be used to determine whether any type of residence is a 'facility that provides services related to health, infirmity, or aging'" as that phrase is used in subsection 11.13(*l*)(2)(B).[3] *Id.* at 4.

When construing a statute, a court's primary objective is to determine and give effect to the Legislature's intent. *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 8 (Tex. 2016). Courts discern that intent from the words of the statute. *Tex. Student Hous. Auth. v. Brazos Cty. Appraisal Dist.*, 460 S.W.3d 137, 141 (Tex. 2015) ("[W]hen construing any statute, including tax exemptions, the truest manifestation of what lawmakers intended is what they enacted."). Courts give an undefined statutory term its "ordinary meaning unless 'a different or

---

[2]Section 11.13(*l*) was amended in 2003. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 240, § 1, 2003 Tex. Gen. Laws 1100, 1100.

[3]You do not ask about, and we do not opine on, any of the other requirements in subsection 11.13(*l*)(2)(B) that must be fulfilled in order for a person's home to maintain its character as a residence homestead under that subsection.

more precise definition is apparent from the term's use in the context of the statute.'" *R.R. Comm'n of Tex. v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 568 (Tex. 2016) (quoting *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). Courts also determine "legislative intent from the statute as a whole, not from isolated portions." *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 484 (Tex. 2016).

With these principles in mind, we turn to the phrase in subsection 11.13(*l*)(2)(B) you ask about, which provides that a temporary absence must be "caused by the owner's . . . residency in a facility that provides services related to health, infirmity, or aging." TEX. TAX CODE § 11.13(*l*)(2)(B). Because the Legislature did not define the word "facility" for purposes of this provision, we look to its common meaning. A "facility" is an "establishment set up to fulfill a particular function or provide a particular service, typically an industrial or medical one." NEW OXFORD AMERICAN DICTIONARY 619 (3d. ed. 2010). Similarly, the Legislature did not define "services" for purposes of subsection 11.13(*l*)(2)(B). A "service" is "an act of assistance." *Id.* at 1596; *see also Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010) (noting that the term "services" is "broad enough to encompass a wide array of activities"). The statute does not require that an owner living in such a facility must receive the specified services, referring only to an owner's temporary "residency" in the type of establishment that makes the specified services available. *See Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 584 (Tex. 2015) (statutory construction obliges courts to "take statutes as [they] find them, understanding that the Legislature purposefully selected the words chosen"). In addition, although the Legislature specified that the services must relate to health, infirmity, or aging, it did not define these terms for purposes of subsection 11.13(*l*)(2)(B). TEX. TAX CODE § 11.13(*l*)(2)(B). Again, we look to the common meaning of these terms. "Health" is "the state of being free from illness or injury; a person's mental or physical condition." NEW OXFORD AMERICAN DICTIONARY 801 (3d. ed. 2010). "Infirmity" is "physical or mental weakness." *Id.* at 890. "Aging" is "the process of growing old." *Id.* at 31. Thus a court would likely construe subsection 11.13(*l*)(2)(B) to refer to an owner's temporary residence in an establishment set up to assist persons with overcoming illness or injury, or with needs related to physical or mental weakness or growing old, through a wide range of activities, regardless of whether the owner receives such services. The relatively recent advent of the facilities you describe may well be grounds for the Legislature to revisit the framework it created. However, it does not warrant a court rewriting the words the Legislature has chosen.

## S U M M A R Y

A court would likely construe subsection 11.13(*l*)(2)(B) of the Tax Code to refer to an owner's temporary residence in an establishment set up to assist persons with overcoming illness or injury, or with needs related to physical or mental weakness or growing old, through a wide range of activities, regardless of whether the owner receives such services.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee