

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00136-CV

**BARRETT FIREARMS MANUFACTURING, INC.**, Barrett Firearms USA, Inc., and Federal
Cartridge Company,
Appellants

v.

Xavier **FLORES**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-17551
Honorable Richard Price, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: July 12, 2023

AFFIRMED

The primary issue of this permissive appeal is one of first impression, and it involves the

statutory construction of section 128.053 of the Texas Civil Practice and Remedies Code. The

appeal stems from a lawsuit against a sport shooting range, a rifle manufacturer, and an

ammunition manufacturer. Appellants Barrett Firearms Manufacturing, Inc., Barrett Firearms

USA, Inc. (collectively, "Barrett"), and Federal Cartridge Company appeal the trial court's order

denying their motions to dismiss a suit filed against them by appellee Xavier Flores. Barrett and

Federal argue the trial court improperly denied their motions because Flores did not serve an expert

report on them, and under section 128.053, they are "affected defendants" entitled to a dismissal. Because we conclude Barrett and Federal are not "affected defendants" whose conduct would have been implicated in the required expert report, we affirm the trial court's order.

### BACKGROUND

On September 11, 2018, Flores and four of his family members visited Bullet Hole Shooting Range in San Antonio, Texas. At the range, Flores rented an M99 .50 caliber rifle manufactured by Barrett and purchased ten rounds of .50 caliber ammunition manufactured by Federal. According to appellants, Bullet Hole's employee instructed and supervised Flores and his family on how to load the ammunition and fire the rifle. Flores and his family took turns firing the rifle, and according to Flores, when he loaded the ninth round of ammunition, "the rifle suddenly and without warning exploded in his hand, causing severe and permanent injuries." Bullet Hole, however, claimed Flores had violated several of the shooting range's rules, including failing to keep the weapon on safety lock and his finger off the trigger, and these violations resulted in his misuse of the rifle.

Flores sued Bullet Hole, Barrett, and Federal under theories of negligence, gross negligence, products liability, and breach of express and implied warranties of merchantability under Chapter 2 of the Texas Business and Commerce Code. Flores did not serve an expert report on any of these defendants within ninety days after filing his original petition, and as a result, the defendants filed motions to dismiss Flores's suit based on section 128.053 of the Texas Civil Practice and Remedies Code. The defendants argued section 128.053 required Flores to serve an expert report on each of them because they are parties in a suit against a sport shooting range, and Flores's failure to serve the report entitled them to a dismissal with prejudice of all claims. Flores filed a response asserting Barrett and Federal were not entitled to a dismissal under section 128.053 because the statute only applies to claims against a sport shooting range, and Barrett and Federal

are separate and distinct manufacturing entities. After a non-evidentiary hearing, the trial court granted the shooting range's motion and denied Barrett and Federal's motions. Barrett and Federal jointly moved for a permissive interlocutory appeal of the trial court's order denying their motions, and the trial court signed an order denying Barrett and Federal's motions to dismiss and granting them permission to appeal the order. We then accepted this permissive appeal.

## ANALYSIS

In a permissive appeal, our review is limited to the controlling legal question on which there is a substantial ground for disagreement and the immediate resolution of which may materially advance the ultimate termination of the litigation. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d); TEX. R. APP. P. 28.3(e)(4); TEX. R. CIV. P. 168. In this case, the trial court's order denying Barrett and Federal's motions to dismiss framed the controlling legal question as determining whether Barrett and Federal are "affected" or "implicated" defendants under section 128.053, and if so, whether section 128.053 entitles them to a dismissal.

Barrett and Federal argue they are entitled to a dismissal under section 128.053 because Flores was required to serve them with an expert report. According to Barrett and Federal, Flores invoked the statute by filing a suit against Bullet Hole, a sport shooting range, and therefore, became a claimant who was required to serve on every party an expert report for each defendant against whom a claim was being asserted. Barrett and Federal further contend because they are parties in the suit and defendants against whom claims are being asserted, Flores should have served each of them with an expert report. Because Flores did not, they argue the plain terms of the statute required the trial court to dismiss with prejudice Flores's claims against them.

Flores contends the statute does not apply to Barrett or Federal, and therefore, he was not required to serve an expert report on either of them. He argues the Texas Supreme Court resolved the question of whether a claimant must serve a particular defendant with the report in *Shinogle v.*

*Whitlock*, 596 S.W.3d 772 (Tex. 2020) (per curiam). According to Flores, in *Shinogle*, the Texas Supreme Court held the plaintiff, who had sued a shooting range and the shooting range's employee, was required to serve the employee with an expert report because the employee's conduct would have been implicated in the report. Therefore, Flores argues under *Shinogle*, only a defendant whose conduct is implicated in an expert report must be served with one, and because Barrett and Federal's conduct would not have been implicated in a report, Flores was not required to serve an expert report on them.

### *Standard of Review*

In general, a motion to dismiss is reviewed for an abuse of discretion. *See, e.g.*, *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018) (stating trial court's decision to dismiss a medical malpractice case based on inadequate expert report is reviewed for abuse of discretion). An abuse of discretion occurs when a trial court does not analyze the law correctly or misapplies the law to the facts. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). We must therefore determine whether the trial court's application of section 128.053 in its ruling to deny Barrett and Federal's motions to dismiss was an abuse of discretion. *See id.*

Here, to determine the controlling legal question of whether section 128.053 applies to Barrett and Federal as "affected defendants," requiring Flores to serve an expert report on them, we apply a de novo standard of review because it is a question of statutory construction. *See Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022); *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012) (explaining whether claim's nature falls within scope of Texas Medical Liability Act, which requires claimant to serve expert report, is matter of statutory construction). "In construing a statute, our objective is to determine and give effect to the Legislature's intent." *Wallace*, 642 S.W.3d at 509. To accomplish this objective, "[w]e begin by examining the plain meaning of the statute's language." *Id.*; *see Maxim Crane Works, L.P. v.*

*Zurich Am. Ins. Co.*, 642 S.W.3d 551, 557 (Tex. 2022); *Williams*, 371 S.W.3d at 177. This is because "the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *Maxim Crane Works*, 642 S.W.3d at 557.

"If a statute is clear and unambiguous, we apply its words according to their common meaning without resort to rules of construction or extrinsic aids." *Id.* at 556 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)) (internal quotation marks omitted). "We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired. . . ." *Id.* (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)) (internal quotation marks omitted). "Otherwise, '[w]ords not statutorily defined bear their common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result.'" *Id.* (alteration in original) (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)). Additionally, "[w]e give effect to all words of a provision and avoid constructions that would render any part of it meaningless." *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021). We do not construe words or phrases in isolation, but instead read the statute as a cohesive, contextual whole. *Tex. Student Hous. Auth. v. Brazos Cnty. Appraisal Dist.*, 460 S.W.3d 137, 141 (Tex. 2015).

### Section 128.053 of the Texas Civil Practice and Remedies Code

Section 128.053 imposes "a threshold expert report requirement that must be satisfied before a claimant may proceed with a lawsuit." *Shinogle*, 596 S.W.3d at 776. In pertinent part, it provides:

> (a)  In a suit against a sport shooting range, an owner or operator of a sport shooting range, or the owner of real property on which a sport shooting range is operated, a claimant shall, not later than the 90th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum

vitae of each expert listed in the report for each defendant against whom a claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date the report is served or all objections are waived.

(b)     If, as to a defendant, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected defendant, shall, subject to Subsection (c), enter an order that:

(1)     awards to the affected defendant attorney's fees and costs of court incurred by the defendant; and

(2)     dismisses the claim with prejudice with respect to the affected defendant.

TEX. CIV. PRAC. & REM. CODE § 128.053(a), (b).

In *Shinogle*, the Texas Supreme Court analyzed section 128.053 to determine "whether the claimant's failure to timely serve an expert report entitled [a] shooting range's employee to seek dismissal." 596 S.W.3d at 775. There, Benjamin Whitlock brought a loaded .22 caliber rifle to a shooting range, and when he handed the rifle to the shooting range employee for inspection, it discharged and shot Whitlock in his leg. *Id*. Whitlock and his wife sued the shooting range and its employee, alleging various negligence theories, including the legal doctrine of respondeat superior. *Id*. When ninety days after the filing of the suit had expired, the defendants filed a motion to dismiss, arguing the plaintiffs "were required to designate and serve expert reports on all parties in accordance with section 128.053's 90-day deadline." *Id*. at 775. The trial court denied the defendants' motion, and the defendants pursued a permissive interlocutory appeal. *Id*. "The appeals court dismissed all the claims against [the shooting range], but allowed the Whitlocks' suit against Shinogle to proceed on the basis that section 128.053(b)(2) does not apply to a shooting range's employees." *Id*.

The Texas Supreme Court reversed the judgment as to the employee, holding he was "entitled to dismissal with prejudice under section 128.053(b)(2) as an implicated defendant whose conduct was required to be addressed in an expert report." *Id*. The court explained its conclusion by analyzing each part of section 128.053 and construing it within the context of Chapter 128's expert report requirements. *Id*. at 776–78. It stated under subsection (a) of section 128.053, the "'claimant' must 'serve on each party' an expert report and 'a curriculum vitae of each expert listed in the report for *each defendant* against whom a claim is asserted.'" *Id*. at 777 (emphasis added) (quoting TEX. CIV. PRAC. & REM. CODE § 128.053(a)). Once the report is served, then a defendant "'whose conduct is implicated in the report must file and serve any objection to the sufficiency of the report.'" *Id*. (quoting TEX. CIV. PRAC. & REM. CODE § 128.053(a)). The court then pointed out subsection (b) of section 128.053 lists the consequences for failing to serve an expert report, and "on the motion of the *affected defendant*," the subsection requires a trial court to dismiss a claim "with prejudice as to the *affected defendant*.'" *Id*. Recognizing the legislature's use of the words "affected defendants" in this subsection, the court reasoned in reading the section as a whole, a specific type of defendant—"a 'defendant whose conduct is implicated in a report'"— is entitled to a dismissal if the claimant fails to timely serve the defendant with an expert report. *See id*. To then determine whether the employee's conduct would have been implicated in an expert report, the court examined the allegations asserted by the Whitlocks and Chapter 128's requirements for expert testimony and definition of expert report. *Id*. It ultimately concluded because the statute required the Whitlocks to serve an expert report addressing how the shooting range and its employee deviated from the applicable standards of care in the operation of the shooting range, the employee was an implicated defendant. *Id*. at 777–78.

*Application*

Here, Flores's lawsuit was filed against a sport shooting range, a rifle manufacturer, and an ammunition manufacturer, and as in *Shinogle*, it is undisputed Flores did not serve an expert report on each party. Under the plain language of subsection (a), Flores, as the claimant, was required to serve an expert report and curriculum vitae of each expert "on each party." TEX. CIV. PRAC. & REM. CODE § 128.053(a). The statute does not define the term "party," but the Texas Supreme Court has construed the common and ordinary meaning of the term as "someone named in a lawsuit." *Zanchi v. Lane*, 408 S.W.3d 373, 378 (Tex. 2013) ("Black's Law Dictionary defines 'party' as '[o]ne by or against whom a lawsuit is brought <a party to the lawsuit>,' and Webster's International Unabridged Dictionary defines party as 'the plaintiff or defendant in a lawsuit[.]' Further, the pleading rules in the Texas Rules of Civil Procedure refer to those named in petitions as 'parties[.]'" (citations omitted)). In this case, Barrett and Federal are parties named in the lawsuit, and therefore, Flores was required to serve each of them with an expert report. *See id*.

Our analysis does not end there, however, because whether section 128.053 entitles Barrett and Federal to a dismissal with prejudice is not determined by an isolated reading of subsection (a). *See Tex. Student Hous. Auth.*, 460 S.W.3d at 140–41. Instead, we must construe the statute as a whole and give effect to every word. *See Odyssey 2020 Acad., Inc.*, 624 S.W.3d at 540. As reasoned in *Shinogle* as well as recognized by the trial court's controlling question, this requires us to determine whether Barrett and Federal are implicated defendants. *See Shinogle*, 596 S.W.3d at 777. To make this determination, *Shinogle* instructs us to examine Chapter 128's requirements for the expert report and ascertain whether the conduct of Barrett and Federal as manufacturers would have been implicated in the expert report that was required to address Bullet Hole's deviation from its applicable standards of care in the operation of the shooting range; we do so by

first reviewing Chapter 128's expert report requirements and then examining the allegations asserted in Flores's live petition. *See id.*

"Chapter 128 requires expert testimony that a sport shooting range, the owner or operator of a range, or the owner of property on which a range is operated deviated from the applicable standard of care." *Id.* at 777 (citing TEX. CIV. PRAC. & REM. CODE § 128.052(c)). It also defines "expert report" as "a written report by an expert that provides a fair summary of the expert's opinion as of the date of the report regarding applicable standards of care for the operation of a sport shooting range, the manner in which a defendant failed to meet the standards, and the causal relationship between that failure and the injury, harm or damages claimed." TEX. CIV. PRAC. & REM. CODE § 128.051(4). In his petition, Flores asserted against each defendant different theories of liability under causes of action for negligence, gross negligence, products liability, and breach of express and implied warranties. Unlike *Shinogle*, where the sport shooting range and its employee were one and the same under the legal doctrine of respondeat superior, here, Flores did not assert a theory connecting Barrett and Federal to Bullet Hole as a matter of law. *See Shinogle*, 596 S.W.3d at 777 (explaining plaintiff alleged shooting range was liable for safety officer's conduct under respondeat superior). And, we decline to speculate and conclude Flores's theories of liability would implicate the conduct of Barrett and Federal as manufacturers in Bullet Hole's operation of its shooting range as a matter of law. Instead, we remain mindful that section 128.053 requires the expert report to address a sport shooting range's deviation from the applicable standards of care in its operation and not the deviation as to each defendant. *See id.* at 777–78 (relying on TEX. CIV. PRAC. & REM. CODE §§ 128.052(c), 128.051(4)). Thus, when considering Chapter 128's requirements for the expert report and the theories of liability Flores asserted, we cannot conclude an expert's opinion regarding the standards of care applicable to Bullet Hole in its operation of a sport shooting range would have implicated Barrett or Federal's conduct. We

therefore conclude Barrett and Federal—as firearm and ammunition manufacturers—are not affected defendants whose conduct would have been implicated in the report concerning the standard of care applicable to a sport shooting range. *See id.*

Barrett and Federal, however, maintain they are implicated defendants because the claims against them and the shooting range are inextricably intertwined. They point to portions of Flores's petition, which allege Bullet Hole breached its duty by failing to properly provide, maintain, and inspect its equipment, which included the firearm and ammunition manufactured by Barrett and Federal. Thus, according to Barrett and Federal, because the maintenance and storage of the ammunition and firearm were part of the shooting range's operation, an expert report discussing the shooting range's standards of care would have implicated them. We reject this argument for two reasons. First, it asks us to bridge the facts pled in the petition to connect Barrett and Federal's conduct as manufacturers to Bullet Hole's conduct as a sport shooting range; we decline to do so. Second, it invites us to treat the manufacturers and the shooting range as one and the same under an "inextricably intertwined" concept without any legal theory to base such a conclusion. However, based on the facts pled and theories of liability asserted by Flores, we do not see how expert testimony discussing the applicable standards of care concerning Bullet Hole's maintenance and storage of Barrett and Federal's products would implicate Barrett and Federal's conduct as manufacturers. *See* TEX. CIV. PRAC. & REM. CODE §§ 128.052(c), 128.051(4); *Shinogle*, 596 S.W.3d at 777–78. On this record, such conduct is too attenuated from Bullet Hole to make them implicated defendants and invoke the protections of section 128.053 as affected defendants. Accordingly, because we conclude Barrett and Federal are not implicated defendants, we hold the trial court did not abuse its discretion in denying Barrett and Federal's motions to dismiss.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order denying Barrett and Federal's motions to dismiss.

Luz Elena D. Chapa, Justice